## INGRAM et al. v. DUNNING.

No. 4852.—Opinion Filed June 6, 1916.

Rehearing Denied Sept. 19, 1916.

(159 Pac. 927.)

**1. Evidence—Sufficiency to Support Verdict.**

The verdict of the jury must reasonably be supported by the evidence.

**2. Evidence—New Trial—Sufficiency of Evidence—Conjecture.**

Where the verdict of the jury is not sustained by sufficient evidence, or is based upon

conjecture, it is the imperative duty of the court, upon timely motion, to set it aside and grant a new trial.

(a) A verdict based upon mere conjecture is not sustained by sufficient evidence.

(Syllabus by Collier, C.)

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Action by J. J. Dunning against C. C. Ingram and another. There was a judgment for plaintiff, and defendants bring error. Reversed and remanded.

Ames, Chambers, Lowe & Richardson, for plaintiffs in error.

Everest & Campbell and Warren K. Snyder, for defendant in error.

Opinion by COLLIER, C. This is an action brought by the defendant in error against the plaintiffs in error to recover the sum of $25,000, with interest thereon at 8 per cent. per annum, for the breach of a contract to manufacture and market a remedy for tuberculosis, and for the wrongful appropriation of the formula for compounding said remedy. Hereinafter the parties will be designated as they were in the trial court.

The petition, in substance, alleges as follows: That defendants induced this plaintiff to enter into a written contract with said defendants on said 1st day of February, 1908, whereby this plaintiff, J. J. Dunning, furnished to said defendants, C. C. Ingram and F. M. Weaver, the formula of said composition known as Coltranoline, for the purpose of permitting said defendants, C. C. Ingram and F. M. Weaver, to test said composition and to determine its force and effect when properly administered, with the further agreement that, in event said defendants, C. C. Ingram and F. M. Weaver, should be satisfied with the same and of its desirability as a medicine to sell to the public, the said plaintiff, J. J. Dunning, and defendants, C. C. Ingram and F. M. Weaver, would organize a corporation in the manner and form provided by said contract; that the said Ingram and Weaver, immediately after procuring said formula, proceeded to test the same and place it upon the market, and failed and refused to recognize Mr. Dunning in the transaction, or to account to him for the sales and to pay him the sum of $50 per month for the period of 60 days during which time tests were to be made; that the said plaintiffs in error, in furtherance of said conspiracy, converted the said formula to their own use and proceeded to compound and manufacture a medicine under the name of Stramoline, to the damage of plaintiff in the sum of $25,000.

The said contract, a copy of which is attached to plaintiff's petition, in part provides:

"That said first party is the owner of a certain compound or medical mixture, the ingredients and component parts of which are konwn only to party of the first part, and which are a valuable asset and property right of said party of the first part, known as Coltranoline, same being a medicine or compound used for the cure of tuberculosis, commonly called consumption, and said second parties are desirous of procuring an interest in said compound, mixture, and the profits which might arise or grow out of the compounding, dispensing, administering, selling, and vending of said Coltranoline as a medicine and curative, but the said second parties are at this time not convinced thoroughly as to the force and effect of said medicine when properly administered, and desire to see the same experimented with for a period of sixty days from this date, and if the same shall come up to the representations and prove a success during said sixty days' period, said first party and second parties are to cause to be created and are to organize a corporation under the laws of the state of Oklahoma, with an authorized capital stock of fifty thousand dollars, the organizers to be the parties hereto and none others, and said first party is to be designated and elected president during his pleasure during all of the time said corporation is in existence and doing business. Said corporation is to be organized under the name of the Coltranoline Company, with its principal place of business at Oklahoma City, state of Oklahoma, and for the business and purpose of mixing, preparing, compounding, administering, selling, and vending said compound and medicine for profit, and each of the parties hereto are to have one-third interest in and to said corporation and stock company, if incorporated. Said second parties jointly agree to pay to said first party the sum of fifty dollars per month, payable on the first day of each month, for said period of sixty days of the experimental stage herein provided for, which said sum shall be and remain the sole property of said first party, and in addition thereto all profits which may arise or result from the selling, compounding, or administering of said compound for said period of sixty days is to be the sole and individual property and profit of the said first party."

A general demurrer was filed to the petition, overruled, and exception saved.

Thereafter the defendants filed an amended answer consisting: First, of a general denial; and, second, admitting the execution of the contract, a copy of which is attached to plaintiff's petition, wherein it was agreed that defendants below should have 60 days in which to experiment with

said formula to determine its merits, and that thereafter a corporation was to be organized as provided by said contract for the purpose of furthering the sale of Coltranoline, and that at the time of making the contract plaintiffs in error had no knowledge of the said formula, and that they did not know the nature of said formula, and that they did not know the nature of the component parts thereof until after the execution of the contract; that when the formula was delivered to them defendants advised the plaintiff that the formula was unsafe to administer to patients, and that same did not have the merits and properties claimed therefor, and that the defendants tested and experimented with the compound or mixture, and found same not to be a success, and thereupon abandoned the contract.

The evidence in this case is very voluminous, but no data is thereby offered by which the jury could possibly ascertain the damage sustained by the plaintiff, if any, by the wrongful appropriation of said formula of the plaintiff by defendants; the entire evidence as to the value of said formula being entirely speculative.

There is no evidence as to the quantity of Coltranoline sold or the profits arising from the sales thereof during the 60 days provided for the investigation. There was undisputed evidence that the formula for the compounding of Coltranoline provided for four grains of morphine in each 12 ounces of said mixture, and that the defendants advised plaintiff that the effect of the use of said compound for any length of time would make morphine fiends, and the sale of it would be in violation of law, and that they declined to carry out said contract as to the formation of a corporation and the manufacture and sale of said compound.

The case was tried to a jury, and at the close of the evidence the defendants moved for a directed verdict, which challenged the attention of the court to the sufficiency of the evidence. The jury returned a verdict for plaintiff in the sum of $2,000. Timely motion was made for a new trial, overruled, and exception saved and judgment rendered in accord with the verdict. To reverse said judgment, this appeal is prosecuted.

There are many errors assigned, but in the view we take of the case we deem it unnecessary to review other than the assignments: (1) That the court erred in overruling the demurrer to the petition; (2) that the verdict rendered is not sustained by sufficient evidence; and (3) that the court erred in overruling the motion for a new trial.

We think that the petition states a good cause of action, and that the demurrer thereto was properly overruled.

As it is stipulated by the contract pleaded in this cause, admitted by the defendants to have been executed by them, that the defendants were to pay to the plaintiff the sum of $50 per month for 60 days pending the investigation of the formula of Coltranoline, $25 of which plaintiff admits to have been paid to him, it therefore clearly appears that the plaintiff was entitled to recover of the defendants the sum of $75, together with interest thereon from the time stipulated in said contract that said $50 per month for 60 days was to be paid, pending the said investigation.

As the evidence does not show the quantity of Coltranoline sold, or the profits arising from such sales during the 60 days provided for the investigation, the plaintiff is not entitled to recover for such sales and profits, if any.

As it is averred in the petition that the formation of the corporation as provided in said contract, and the manufacture and marketing of Coltranoline, was conditioned upon C. C. Ingram and F. M. Weaver testing said composition and determining its force and effect when properly administered, with the further agreement that in the event said defendants, Ingram and Weaver, should be satisfied with the same and of its desirability as a medicine, we are of the opinion that defendants had a right upon fairly determining that the investigation provided to be made by said contract did not prove that the formula for the manufacture of Coltranoline was of the merit claimed for it, and was an unsafe remedy to be administered, to decline to carry out the provisions of the contract as to the creation of a corporation and the manufacture and sale of Coltranoline, without incurring any liability to the plaintiff for failure to form a corporation and to manufacture and market Coltranoline. In short, as admitted by the pleading, the provision of the contract as to the formation of the corporation and the manufacture and sale of Coltranoline was conditioned that the investigation provided for by said contract satisfied defendants as to the value of Coltranoline as a remedy for tuberculosis.

Inasmuch as the formation of the corporation and the marketing of Coltranoline was by the contract conditioned that the investigation provided for by the contract was satisfactory to the defendants as to the value of Coltranoline as a remedy for tuberculosis, and the unquestioned evidence being that the

formula for compounding Coltranoline was not approved by defendants, and they notified plaintiff of their nonapproval of the same and their refusal to form a corporation and market Coltranoline, under the view we take of the contract, the plaintiff was only entitled to recover the $50 per month provided to be paid him during the 60 days' time provided for investigation of said formula and the profits, if any, arising from the sale of Coltranoline during said 60 days contracted for investigation, and the damages resulting from the wrongful appropriation of said formula for Coltranoline, if the same was appropriated by them. If it be admitted that there is evidence reasonably tending to show defendants' appropriated plaintiff's formula compounding Coltranoline, that is, that the formula of Coltranoline is substantially the same as Stramoline, which we do not hold, the defendants would be liable to plaintiff for the value of said formula, but to entitle plaintiff to recover therefor the value of the formula must be sustained by sufficient evidence reasonably tending to support the same, as it is an elementary principle of law that the findings of a jury must be reasonably sustained by the evidence.

In The Mayor, Aldermen, and Commonalty of the City of New York v. Franklin Ransom and Uzziah Wenman, 23 How. (U. S.) 487, 16 L. Ed. 515, it is held:

"In an action for damages for the infringement of a patent right, the plaintiff must furnish some data by which the jury may estimate the actual damage."

In the body of the opinion it is said:

"But, if he fails to furnish any evidence of the proper data for a calculation of his damage, he should not expect that a jury should work out a result for him by inferences or presumptions founded on such subtle theories."

The evidence as to the value of the formula alleged to have been wrongfully appropriated by the defendants is entirely speculative, and we are unable to see that the plaintiff has furnished evidence to entitle him to recover for the wrongful appropriation of plaintiff's formula, even if such wrongful appropriation was made by defendants, and it did not afford any basis whatever for the jury to predicate the verdict rendered. It therefore clearly appears that the verdict for $2,000 is not reasonably supported by the evidence. In short, the verdict for $2,000 is founded upon conjecture, a mere guess, and the court committed prejudicial error in overruling the motion for a new trial.

Section 5033, Rev. Laws 1910, provides:

"* * * The former verdict, report or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party: * * *

"6. That the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law."

"A verdict based upon conjecture * * * should be set aside." Spaulding Mfg. Co. v. Holiday, 32 Okla. 823, 124 Pac. 35.

"Where there is no evidence reasonably tending to establish a material issue submitted to the jury under the instructions of the court, which the jury must have found in favor of the prevailing party in order to have returned the verdict returned, the verdict will be set aside." Terry v. Creed, 28 Okla. 857, 115 Pac. 1022.

"Where, on inspection of the record, it is apparent that the evidence does not reasonably sustain the verdict of the jury, the verdict will be set aside by this court." Hassel v. Morgan et al., 27 Okla. 453, 112 Pac. 969.

"Where there is an entire lack of evidence to sustain a material issue found by * * * the jury, this court will set aside the verdict and grant a new trial." Puls v. Robt. Casey, 18 Okla. 142, 92 Pac. 388.

We therefore recommend that, if the plaintiff remits the judgment rendered to the sum of $75, with interest thereon at 6 per cent. per annum from the 8th day of March, 1908, this cause be affirmed, and, if the plaintiff fails to so remit said judgment, that this cause be reversed and remanded, with instructions to grant a new trial.

By the Court: It is so ordered.