## WARD et al. v. WARD.

No. 13271—Opinion Filed May 7, 1924.

(Syllabus.)

**1. Husband and Wife—Alienation of Affections—Action Against Parents—Burden of Proof.**

"In an action by either the husband or wife against the parents of the other for alienation of affections, it must appear that there had been a direct interference on defendants' part sufficient to satisfy the jury that the alienation was caused by the defendants, and the burden of proof is upon the plaintiff to show such interference." Brison et al. v. McKellop, 41 Okla. 374, 138 Pac. 154.

**2. Same.**

"In actions against parents of either the husband or wife of the plaintiff, a much stronger rule prevails concerning the burden of proof, and plaintiff must not only show improper motives of the parents, but that the alienation was, in a sense, maliciously brought about. Where the action is against a stranger, the plaintiff need only show that it was wrongfully brought about." Brison et al. v. McKellop, 41 Okla. 374, 138 Pac. 154.

**3. Appeal and Error—Conclusiveness of Verdict—Evidence to Support.**

"In order for the verdict of a jury to stand, there must be in the record such competent evidence that if uncontradicted and unimpeached, will constitute prima facie proof of every fact essential as a matter of law to the establishment of the cause

of action or defense upon which the verdict is based." Modern Woodmen of America v. Marie L. Michelin, 101 Okla. 217, 225 Pac. 163.

Error from District Court, Oklahoma County; E. D. Oldfield, Judge.

Action by Mamie E. Ward against George R. Ward and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Shirk, Danner, Fowler & Christian, for plaintiffs in error.

L. D. Mitchell, for defendant in error.

LYDICK, J. This is an action for damages brought by a wife against her husband's parents for the alienation of her husband's affections. Mamie E. Ward is the wife. Sam Ward is the husband. George R. Ward and E. H. Ward are the parents. The plaintiff and her husband were married on September 10, 1918, it being the third marriage of the plaintiff. She was then slightly under 40 years of age, and he was a few years older. The parents were very elderly people. Sam Ward and his wife had very small financial resources and he earned his living as a railway trainman. The parents were likewise very poor people. The plaintiff and her husband had established their home in Oklahoma City, and the parents had their separate home in the same city. On October 11, 1920, Sam Ward abandoned his wife and went to live with his parents. Certain proceedings were had between them in the divorce court, and the wife thereupon brought this action against the husband's parents for damages, alleging that they had wrongfully alienated her husband's affections. She recovered a verdict at the hands of the jury and a judgment of the court based thereupon for the sum of $2,500. The parents bring the case here on appeal. We refer to the parties according to the position they occupied in the lower court.

One assignment of error is that the verdict and judgment are not sustained by sufficient evidence. An examination of the record shows that the evidence favorable to the plaintiff establishes a story of facts substantially as follows, to wit: From the date of the marriage of the plaintiff and her husband and until a time near the date of their separation, they were affectionately devoted to each other, and lived happily together at their Oklahoma City home. The parents were frequent visitors at their home and the most friendly relations existed between and among all of these parties. The husband was in rather poor health. Early in the autumn of 1920, he began to complain

of his wife's conduct towards other men and complained concerning some other matters of only ordinary importance. The parents visited at the plaintiff's home frequently and expressed regret at the condition of the son's health and the fact that under these conditions he had to do hard work. They frequently said that an uncle of theirs had become very wealthy from oil production and was promising to give them a very large amount of money and that when he did so they intended to give the son material assistance. The plaintiff, on the witness stand on her own behalf, testified that these parents said to her:

"* * * That if Uncle Ely ever intended giving them any money, that they hoped he would give it to them at once, that they wanted him to give it to them; or, they would be so glad if he did, so they could take Sam home and take care of him and put him in business, so he would not have to work any more as long as he lived, and mother would clap her hands in front and behind and say how glad she was that he would do that."

The parents remained very friendly towards the wife until the separation. The large sum of money expected from the uncle finally came to the parents. The husband, complaining of his wife as already stated, then left his wife and went to live with his parents. A witness for the plaintiff visited the parents thereafter. Concerning them she testified as follows:

"They said Sam was at home to live with them, and that Mrs. Ward lived with other men; that she didn't stay at home and take care of Sam, and that she was also unclean, a spendthrift—they told about her spending Sam's money, and that Mrs. Ward was not the right kind of a woman; they told me about their oil land, about Uncle Ely giving them oil money, and that Sam would not have to work any more; that they would take care of Sam and set him up in business; that Mr. Ward was going to give him $1,000 a month, and that he was going to be set up in business."

After the separation, the parents became very unfriendly towards the plaintiff and frequently and in her presence and elsewhere said and did things indicating a hostile feeling towards the plaintiff and expressed their lack of faith in the plaintiff's character and in the purity of her womanhood. Many witnesses were produced by the plaintiff, but the foregoing statement of facts fairly express the story as told by witnesses most favorable to the plaintiff's

cause. There is no evidence in the record sufficient to show that either of the parents made any statement or did any act which was by them intended to cause or which in fact did cause Sam Ward to lose his affection for his wife. The cause of these aged people forming their expressed opinions of their son's wife is not disclosed. Under all the circumstances of the case, it is reasonable to presume that the parents formed their dislike for the son's wife from information given them by the son. It surely cannot be said that the husband's opinions of his wife or his loss of affection for her were induced or produced by the words or actions of his parents. There is no evidence sufficient to show that the acts of the parents were inspired by malice. It was incumbent upon the plaintiff to plead and prove that the actions of the defendants caused Sam Ward to lose his affection for his wife or contributed towards producing such result. The evidence would be more persuasive that the son alienated from his wife the affections of his parents. It was also necessary for the plaintiff to plead and prove that the actions of the defendants in causing and producing such results were prompted by malice. In both these particulars the evidence produced by the plaintiff is insufficient. See Brison v. McKellop, 41 Okla. 374, 138 Pac. 154, and the many cases cited therein.

In the case of Modern Woodmen of America v. Marie L. Michelin, 101 Okla. 217, t225 Pac. 163, we said:

"In order for the verdict of a jury to stand, there must be in the record such competent evidence that, if uncontradicted and unimpeached, will constitute prima facie proof of every fact essential as a matter of law to the establishment of the cause of action or defense upon which the verdict is based."

The other alleged errors of which the plaintiffs in error here complain may not occur on a retrial of this case, and for that reason are not given consideration here.

The judgment of the lower court is reversed, and the cause remanded, with directions to vacate the judgment heretofore rendered in this case in favor of the plaintiff, and grant a new trial and proceed in accordance with the law as expressed in this opinion.

JOHNSON, C. J., and HARRISON, WARREN, and GORDON, JJ., concur.