# Kuisis, Appellant, *v.* Baldwin-Lima-Hamilton Corporation.

*Giles J. Gaca,* with him *Janet N. Valentine,* and *Thomson, Rhodes & Grigsby,* for appellant.

*Thomas J. Jackson,* with him *G. Daniel Carney,* and *Thorp, Reed & Armstrong,* for appellee.

OPINION PER CURIAM, March 27, 1973:
Order affirmed.

———

DISSENTING OPINION BY SPAULDING, J.:

Appellant Andrew J. Kuisis appeals from an order of the Court of Common Pleas of Allegheny County granting appellee Baldwin-Lima-Hamilton Corporation's motion for judgment on the whole record. The order followed trial and submission of the case to a jury, which was unable to agree on a verdict, and therefore dismissed. At trial, the appellant attempted to establish product liability, under §402A,[1] for a defect in a crane that was twenty-one years old. He was working near a load held suspended by the crane when the load suddenly dropped on him, causing serious injury. Appellant presented evidence to show that the accident was caused by the defective design of the brake locking device on the crane. The trial judge, however,

———

[1] Restatement 2d, Torts §402A.

excluded much of the proffered testimony of the appellant's expert witness.

To reach the jury in a products liability case, plaintiff must show that a defective condition of the product caused injury to the user. Proof of the happening of the accident may be sufficient to prove a defective condition. ". . . [T]he occurrence of a malfunction of machinery in the absence of abnormal use and reasonable secondary causes is evidence of a 'defective condition' within the meaning of §402A . . . ." *MacDougall v. Ford Motor Co.,* 214 Pa. Superior Ct. 384, 391, 257 A. 2d 676, 680 (1969). In addition, plaintiff must show that there was no substantial change in the defective part of the product between the time it was sold and the time of the accident. *Burbage v. Boiler Eng. & Supp. Co., Inc.,* 433 Pa. 319, 249 A. 2d 563 (1969).

The appellees contend that there was evidence of abnormal use, a secondary cause, and substantial changes. They point to evidence that the machine was operated by a "known boozer" during the first month of its operative life and that the machine had been operated around-the-clock at certain times as indicative of abnormal use. There is no evidence, however, either that this man abused the machine or that such occasional continuous use is abnormal for a piece of heavy machinery.[2]

Appellees also argue that a piece of machinery that is twenty-one years old must necessarily be different

---

[2] There was evidence that the operator of the crane left the cab with the load suspended and the machine on and that the accident happened while he was not in the cab. Even if the operator violated a rule of the Pennsylvania Department of Labor and Industry in leaving his position at the controls while the load was suspended, the operator's action was not an intervening or secondary cause since it is unlikely that even if the operator had been in position, he could have stopped a heavy load from dropping four feet if this was caused by a mechanical malfunction.

than it was when it was delivered by the manufacturer. Although age is certainly an important factor, it is only one of the factors a jury must consider. In cases such as this, in which there is evidence that the faulty part is substantially the same as when the machinery was delivered, the question must be submitted to the jury. There is no *per se* rule that a manufacturer is no longer liable for a defect in his product after it has been used a certain length of time. *Brady v. Finklea,* 400 F. 2d 352 (5th Cir. 1968) (electrical system 28 years old; citing cases from several jurisdictions with time lapses ranging from 15 months to 15 years); *Pryor v. Lee C. Moore Corp.,* 262 F. 2d 673 (10th Cir. 1958) (derrick after 15 years); *Dorsey v. Yoder Co.,* 331 F. Supp. 753 (E.D. Pa. 1971) (metal slitting machine 7 years old).

Here, there was evidence of substantial changes in the crane. It had originally been a shovel, which was first converted to a dragline, and was subsequently converted to a crane. In addition, two motors had been burned out and replaced, part of the braking system had been replaced, and the brake latch chain had been replaced. The critical part in this case, however, is the brake locking mechanism, not the whole crane, since there was evidence that all other parts of the machine were in proper condition after the accident. Only the brake locking pedal was in a released position, although it had been fastened by the operator before he left the cab and had held for one to two minutes, after he left, before the accident.

In *Burbage,* supra, the Court held that liability can attach to a manufacturer because of a defect in a component part even though that part was assembled with separate products by a third party. In that case, there had been changes in the part, but the Supreme Court upheld the jury's finding that the changes had not

caused the defect. In this case there was ample evidence that the brake locking mechanism was the same as the blueprint for it from twenty-one years earlier. In fact, there was so much evidence in that regard that the trial judge did not allow the plaintiff to put on one witness to testify to that fact because the testimony would have been repetitive.

There remain numerous questions as to whether changes to the other parts of the crane would have affected the working of the brake locking mechanism. The appellant sought to answer these questions through the testimony of his expert witness, but the court below refused to admit much of that testimony on the grounds that the witness did not have sufficient expertise in the area of mechanical engineering which would enable him to qualify as an expert regarding the design of the machine. A review of the record shows, however, that the expert was eminently qualified.[3] Although the admission of expert testimony is left to the discretion of the trial judge, refusal to admit the expert's testimony in this case was an abuse of discretion.[4]

Since the exclusion of the proffered testimony prejudiced the appellant's case, I would remand the case for

---

[3] He possessed a Bachelor of Science degree in safety engineering; worked as a safety engineer for various companies, including at least two years for a company which manufactured all types of cranes; worked for the State of Iowa, in charge of inspections of all construction equipment; was on the Pennsylvania Governor's Advisory Committee on Occupational Safety, and was a member of many safety societies; was a legislative delegate to the American National Standards Institute; has taken a full line of mechanical engineering courses and had a complete background in mechanical engineering; had much experience with braking mechanisms of the type involved in this case. Further, he had thoroughly examined the crane involved in this case, albeit four years after the accident.

[4] See *Fady v. Danielson Construction Co.*, 224 Pa. Superior Ct. 33, 302 A. 2d 405 (1973).

70

a new trial. See *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 242 A. 2d 231 (1968). When appellant is permitted to introduce this testimony and if it shows that the critical part of the crane was not substantially changed in relation to the rest of the machine, he should be permitted to go to the jury on the ultimate question of the liability of the manufacturer. *Burbage,* supra.

HOFFMAN, J., joins in this dissenting opinion.